J-A22027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KEANU LACROIX DUNN | : | |
| | : | |
| Appellant | : | No. 180 MDA 2021 |

Appeal from the Judgment of Sentence Entered January 7, 2021
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0000524-2019

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: DECEMBER 30, 2021**

Appellant, Keanu Lacroix Dunn, appeals from the judgment of sentence entered on January 7, 2021.  In accordance with our recent *en banc* opinion in **Commonwealth v. Simmons**, ___ A.3d ___, 2021 WL 3641859 (Pa. Super. 2021) (*en banc*), we vacate Appellant's judgment of sentence and remand both for resentencing and for the trial court to reinstate Appellant's original order of probation.

On June 26, 2019, Appellant entered an open guilty plea to two counts of terroristic threats and one count of possession of a weapon on school property.[1]  On August 7, 2019, the trial court sentenced Appellant to serve

_____

[1] 18 Pa.C.S.A. §§ 2706(a)(1), 2706(a)(3), and 912(b), respectively.

an aggregate term of 11-and-one-half to 23 months in jail, followed by 60 months of probation, for his convictions.[2]

On May 19, 2020, Appellant was placed on parole. The trial court's parole order declares:

> [Appellant] is placed on parole effective May 19, 2020, for a period of 8 months 21 days under the supervision of the Franklin County Probation Department on the conditions that [Appellant] lives as a law-abiding citizen [and] complies with the Rules and Special Conductions of Probation-Parole approved by the [trial] court. . . .

Trial Court Order, 5/15/20, at 1. Under the terms of this order, Appellant's parole would not expire until the end of the day on February 9, 2021.

On October 12, 2020, Appellant was recommitted to jail because of new criminal charges. While he was in jail, Appellant committed instances of "assaultive behavior." As a result, on November 10, 2020, the Commonwealth filed a petition to revoke Appellant's parole and to anticipatorily revoke Appellant's probation. As is relevant to the case at bar, the Commonwealth sought to revoke Appellant's parole and probation because: "[Appellant] is in violation of Probation/Parole[] Rule 2 requiring [Appellant] to not engage in

---

[2] Specifically, the trial court sentenced Appellant to serve: at Count 1 (terroristic threats under 18 Pa.C.S.A. § 2706(a)(1)), 11.5 to 23 months in jail, followed by 36 months of probation; at Count 2 (terroristic threats under 18 Pa.C.S.A. § 2706(a)(3)), 11.5 to 23 months in jail, followed by 36 months of probation, with the sentence to be served concurrently to that imposed at Count 1; and, at Count 3 (possession of a weapon on school property), 24 months of probation, with the sentence to be served consecutively to that imposed at Count 1. *See* Written Sentencing Order, 8/7/19, at 1-3.

any assaultive and/or threatening behavior in that:  . . . [Appellant] was issued two misconducts at the Franklin County Jail on 10/18/20 where [Appellant] threatened bodily injury."  Violation Notice, 11/10/20, at 1.

The trial court held a violation of probation and parole hearing on January 7, 2021.  As the trial court explained, the following evidence was presented during this hearing:

> At [Appellant's] violation hearing, the Commonwealth introduced testimony from Frank Gordon ("Gordon"), a former correctional officer with the Franklin County Jail at the time [Appellant] was incarcerated. A summary of his testimony is as follows:
>
> Gordon described several incidents concerning [Appellant] which he witnessed first-hand. He testified that the first incident occurred on October 18, 2020. That morning, when Gordon let [Appellant] out for day space, [Appellant] became disrespectful towards him. Further, Gordon saw [Appellant] proceed to talk to another inmate and heard him say, "I'm going to fuck those guys up."  [N.T. Violation Hearing, 1/7/21, at 5].  Thereafter, [Appellant] made a telephone call, during which Gordon heard him say, "[T]hose fucking CO's are pissing me off. I'm about to fuck them all up." ***Id.*** According to Gordon, [Appellant] was placed on disciplinary status due to this incident.
>
> Gordon then described another incident with [Appellant] about an hour-and-a-half later the same day. Gordon stated that [Appellant] continued to be disrespectful, saying "[O]h, you ain't done dealing with me." ***Id.*** at 6. Gordon also observed [Appellant] kicking his cell door several times, and a shift commander even called down to the unit to ask what the noise was.  According to Gordon, [Appellant] damaged jail property, and in another incident, had broken the window in his cell door.
>
> Gordon then described a final incident on October 30, 2020. He explained that he was making rounds when he heard a

- 3 -

loud noise followed by a scuffling noise. Gordon testified that when he went to the cell [Appellant] shared with another inmate, he observed [Appellant] "down on top of his cell bunk, on top of the inmate . . . had [the inmate] in a choke hold." *Id.* Gordon told the [trial c]ourt that he ordered [Appellant] and the other inmate to stop fighting, but [Appellant] did not get up. When they did get up, Gordon avers that "they were still assaultive to each other and they had to be separated, basically." *Id.* When asked for clarification on how the inmates continued to be assaultive toward each other, Gordon responded that "[t]hey were still engaged in fighting. [Appellant] was still engaged in actively trying to choke hold [the other inmate]." *Id.* at 6-7.

Gordon's testimony then continued as follows:

[ATTORNEY FOR THE COMMONWEALTH]: And did you see him throwing punches at that point in time or anything of that nature?

[GORDON]: [Appellant] just had his, you know, arms wrapped around [the other inmate]'s neck.

[ATTORNEY FOR THE COMMONWEALTH]: And when you say, had his arms wrapped around his neck, was he using his hands or was he behind him choking him, how was— in what position was he doing that?

[GORDON]: He was off to the side. He didn't use his hands. Kind of his forearm. Upper-arm area.

*Id.* at 7. At the conclusion of his testimony, Gordon confirmed that he personally witnessed each of these behaviors by [Appellant], as he was assigned on those housing units each time. He also positively identified [Appellant] on the Zoom hearing as the individual he was testifying about.

On cross-examination, counsel for [Appellant] asked Gordon whether [Appellant] was punished at the jail for the incidents Gordon had described. Gordon replied that [Appellant] was written up for and subsequently adjudicated guilty on all three of those incidents through Franklin County Jail procedures.

The following exchange then occurred between counsel for [Appellant] and Gordon:

[COUNSEL FOR APPELLANT]: Okay. On the October 30 incident with [the other inmate], was this [the other inmate] was fighting with [Appellant] and [Appellant] was fighting with [the other inmate], this was a mutual combat-type situation?

[GORDON]: From what I understand, [the other inmate] had been asleep; he was housed on the bottom bunk.

[COUNSEL FOR APPELLANT]: I'm just asking what you saw.

[GORDON]: Correct, yes. I'm going to get to that. So [the other inmate] was housed on the bottom bunk and when I got to the cell, [Appellant] was on top of [the other inmate]'s bunk where he was housed. Had him in that choke hold.

[COUNSEL FOR APPELLANT]: Okay. But you didn't see the beginning of the fight?

[GORDON]: No. I just – I only came to the cell because I heard the loud noise and the scuffling.

[COUNSEL FOR APPELLANT]: Okay. And am I correct that no criminal charges were filed as a result of these incidents?

[GORDON]: I'm not aware of any, no.

[COUNSEL FOR APPELLANT]: Okay.

[GORDON]: That would have been [the other inmate]'s doing.

[COUNSEL FOR APPELLANT]: And—

[GORDON]: But just to clarify, Attorney, we still provide a misconduct for the incident, whether or not charges are filed by the person assaulted.

- 5 -

> [COUNSEL FOR APPELLANT]: Correct. And [] that misconduct was carried out at the Franklin County Jail, back in October or November, I assume?
>
> [GORDON]: Correct, October 30, 2020.
>
> [COUNSEL FOR APPELLANT]: Okay. And punishment for something like that would be placed on status, quote unquote, in the hole?
>
> [GORDON]: Disciplinary segregation, correct. Yes.

> ***Id.*** at 9-10.

Trial Court Opinion, 3/23/21, at 6-10.

On January 7, 2021, the trial court concluded that Appellant was "in violation of the terms and conditions of his split sentence." Trial Court Order, 1/8/21, at 1. The trial court then resentenced Appellant to serve an aggregate term of 18 to 84 months in prison. N.T. Violation Hearing, 1/7/21, at 15.

After Appellant filed a timely notice of appeal, the trial court ordered Appellant to file a concise statement of errors complained of on appeal, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b). ***See*** Trial Court Order, 2/5/21, at 1. Appellant's Rule 1925(b) statement included a number of discretionary aspects of sentencing claims and one vague sufficiency of the evidence claim. The sufficiency claim declared:

> Whether the [trial c]ourt [] erred in finding [Appellant] in violation of his probation because the violation had not been proven by sufficient evidence[?]

Appellant's Rule 1925(b) Statement, 2/26/21, at 2.

Appellant raises the following claims on appeal:

- 6 -

1. Whether the [trial c]ourt [] erred in finding [Appellant] in violation of his probation because the violation had not been proven by sufficient evidence[?]

2. [Whether the trial court abused its discretion when it imposed a manifestly unreasonable sentence?]

Appellant's Brief at 4-5.[3]

In **Commonwealth v. Simmons**, ___ A.3d ___, 2021 WL 3641859 (Pa. Super. 2021) (*en banc*), an *en banc* panel of this Court overruled prior precedent first articulated in **Commonwealth v. Wendowski**, 420 A.2d 628 (Pa. Super. 1980) (holding that a trial court may anticipatorily revoke an order of probation and resentence accordingly prior to the commencement of probationary supervision). In reviewing the applicable statutes, the **Simmons** Court determined that when a trial court imposes an order of probation to run consecutive to a term of confinement, the defendant is "required to serve his entire term of total confinement before he beg[ins] to serve his probationary term." **Id.** at *8. Thus, the **Simmons** Court held, the conditions of an order of probation "cannot take effect until the term of imprisonment ends." **Id.** at *9. Accordingly, where an appellant is on parole and his probationary period has yet to begin, a trial court cannot anticipatorily

---

[3] Appellant raises three separate discretionary aspects of sentencing claims on appeal. In the interest of brevity, we have consolidated the separate claims into a single claim.

find that appellant was in violation of the conditions of his probation.[4] *Id.* at *12.

Here, as described above, Appellant was on parole, and not probation, in October 2020, when the incidents giving rise to his violation occurred. Consequently, the trial court lacked authority to find that Appellant violated a condition of his probationary sentence before it commenced. *See id.* at *9. As such, the trial court erred in resentencing Appellant for the anticipatory violation of his probation. As the trial court possessed only the authority to find Appellant in violation of his parole, we are constrained to vacate Appellant's judgment of sentence to the extent the court found Appellant in

---

[4] As we explained in *Simmons*, where the trial court finds the defendant in anticipatory violation of the conditions of his probation and then resentences the defendant for this alleged violation, the trial court is imposing an illegal sentence. This is because the trial court does not have statutory authority to find that the defendant violated probationary conditions which have not yet commenced and, "to the extent the trial court amend[s an] original order of probation to run concurrently, rather than consecutively, the trial court illegally modif[ies a defendant's] sentence, as the trial court [does] not have jurisdiction to modify [a] sentence more than 30 days after imposition." *Simmons*, 2021 WL 3641859, at *1; *see also Commonwealth v. Bischof*, 616 A.2d 6, 10 (Pa. Super. 1992) ("a modification of a sentence imposed on a criminal defendant which increases the punishment constitutes further or double jeopardy") (quotations and citations omitted); *Commonwealth v. Everett*, 419 A.2d 793, 794 (Pa. Super. 1980) ("[s]ince the original [order of] probation was illegal, the sentence of imprisonment imposed for violation of that probation was illegal"). Further, although Appellant has not raised an illegal sentencing claim on appeal, we may consider this issue *sua sponte*, as "challenges to an illegal sentence can never be waived and may be raised *sua sponte* by this Court." *Simmons*, 2021 WL 3641859, at *1 n.3.

violation of a condition of his probation and resentenced him for the alleged probation violation.

Appellant has neither raised nor developed a claim alleging that the trial court erred in finding him in violation of his parole.[5] Thus, we affirm Appellant's judgment of sentence to the extent it revoked his parole. However, we must vacate Appellant's judgment of sentence in part, as the trial court did not have the authority to resentence Appellant for a parole violation. ***See Commonwealth v. Kalichak***, 943 A.2d 285, 290 (Pa. Super. 2008) ("Unlike a probation revocation, a parole revocation does not involve the imposition of a new sentence. Indeed, there is no authority for a parole-revocation court to impose a new penalty. Rather, the only option for a court that decides to revoke parole is to recommit the defendant to serve

---

[5] Within Appellant's brief, Appellant claims that the evidence was insufficient to support the revocation of his probation because the Commonwealth did not introduce the specific conditions of his probation at the hearing. ***See*** Appellant's Brief at 7-10. Even if we viewed Appellant's claim as encompassing the revocation of his parole, we would still be forced to conclude that Appellant waived his claim on appeal. This is because Appellant's Rule 1925(b) statement vaguely challenged the sufficiency of the evidence, without "specify[ing] the element or elements upon which the evidence was insufficient." ***Commonwealth v. Williams***, 959 A.2d 1252, 1257 (Pa. Super. 2008) ("[i]f Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [] does not specify the allegedly unproven elements[,] ... the sufficiency issue is waived [on appeal]") (quotations and citations omitted).

the already-imposed, original sentence").[6]   Further, as in **Simmons**, we remand with instructions to reinstate the original order of probation and for resentencing.

Judgment of sentence vacated. Case remanded with instructions to reinstate the original order of probation and for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/30/2021</u>

---

[6] Our holding renders Appellant's discretionary aspect of sentencing claims moot.